# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICOLE TEHRANI, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) C.A. No.: ) |
| v. | ) CLASS ACTION ) |
| BIOGEN, INC., GEORGE A. SCANGOS, and PAUL J. CLANCY, | ) COMPLAINT FOR VIOLATION OF ) FEDERAL SECURITIES LAWS ) |
| Defendants. | ) ) ) ) DEMAND FOR JURY TRIAL |

Plaintiff Nicole Tehrani ("Plaintiff"), by her attorneys, except for her own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Biogen, Inc. ("Biogen" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by the Company, press releases and other public statements issued by the Company, and media reports about the Company. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery:

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all persons who purchased Biogen common stock between January 29, 2015 and July 23, 2015, inclusive (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against certain of Biogen's executive officers and directors.

2. Biogen is a global biopharmaceutical company focused on discovering, developing, manufacturing, and delivering therapies for neurological, autoimmune, and hematologic disorders. The Company's principal marketed products include AVONEX, PLEGRIDY, TECFIDERA, TYSABRI, and FAMPYRA for multiple sclerosis ("MS"), ALPROLIX for hemophilia B, and ELOCTATE for hemophilia A. Biogen also collaborates on the development and commercialization of RITUXAN for the treatment of non-Hodgkin's lymphoma, chronic lymphocytic leukemia, and other conditions and shares profits and losses for GAZYVA, which is approved for the treatment of chronic lymphocytic leukemia.

3. Since January 29, 2015, Biogen and certain of its officers and directors have misrepresented the financial benefits that would inure to the Company from its sales of

TECFIDERA ("Tecfidera"). On January 29, 2015, in a press release issued by the Company and in an earnings call with financial analysts, Biogen and certain of its officers represented expected revenue growth between 14% and 16% in 2015 compared to 2014 revenues. As will be discussed in more detail below, the Company's revenue is largely dependent on Tecfidera, and any weakness in sales of Tecfidera will have significant consequences for the Company as a whole.

4. On July 24, 2015, Biogen issued a press release announcing its financial results for the second quarter of 2015. Among other things, the Company disclosed a revision to its previously issued revenue growth guidance. Biogen reduced its expected revenue growth by about half, now expecting revenue growth of approximately 6% to 8% compared to 2014. The Company disclosed that this revision was "based largely on revised expectations for the growth of TECFIDERA."

5. On this news, the price of Biogen common stock declined from a closing share price of $385.05 on July 23, 2015 to close at $300.03 per share on July 24, 2015, a loss of more than 22%, on extremely heavy trading volume.

## JURISDICTION AND VENUE

6. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

8. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render

the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District. Biogen is headquartered in this District, with its principal place of business located at 225 Binney Street, Cambridge, Massachusetts 02142.

## PARTIES

10. Plaintiff purchased Biogen's securities as set forth herein and in her certification filed herewith.

11. Biogen is a corporation organized and existing under the laws of the State of Delaware. It maintains its principal corporate offices at 225 Binney Street, Cambridge, Massachusetts 02142. Its common stock trades on the NasdaqGS ("NASDAQ") under the symbol, "BIIB."

12. Defendant George A. Scangos ("Scangos") is Chief Executive Officer and a director of Biogen.

13. Defendant Paul J. Clancy ("Clancy") is Executive Vice President, Finance and Chief Financial Officer of Biogen.

14. Scangos and Clancy are collectively referred to herein as the "Individual Defendants."

15. Biogen and the Individual Defendants are collectively referred to herein as "Defendants."

## CONTROL PERSON ALLEGATIONS

16. By reason of the Individual Defendants' positions with the Company as executive officers (and in Scangos's case, as a director as well) the Individual Defendants possessed the power and authority to control the contents of Biogen's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to him but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

**Background**

17. Biogen is a global biopharmaceutical company focused on discovering, developing, manufacturing, and delivering therapies for neurological, autoimmune, and hematologic disorders. The Company's principal marketed products include AVONEX, PLEGRIDY, TECFIDERA, TYSABRI, and FAMPYRA for multiple sclerosis ("MS"), ALPROLIX for hemophilia B, and ELOCTATE for hemophilia A. Biogen also collaborates on the development and commercialization of RITUXAN for the treatment of non-Hodgkin's lymphoma, chronic lymphocytic leukemia, and other conditions and shares profits and losses for GAZYVA, which is approved for the treatment of chronic lymphocytic leukemia.

18.     Tecfidera is one of Biogen's most important drug products. In the Company's Annual Report on Form 10-K filed with the SEC on February 4, 2015 (the "10-K"), Biogen stated, "Our current revenues depend upon continued sales of our principal products, TECFIDERA . . . ."

19.     According to its dedicated website, "TECFIDERA is a pill approved by the FDA to treat relapsing multiple sclerosis (MS)."[1] Relapsing MS is a progressive disease that causes damage to the central nervous system, manifested in outward and silent symptoms. Relapsing MS is thought to be an autoimmune disease, which means that, instead of defending the body against harmful invaders (such as viruses or bacteria), the immune system attacks the body itself.

20.     Tecfidera treats relapsing MS by slowing the development of brain lesions and the progression of physical disability.

**The Material Misrepresentations and Omissions**

21.     On January 29, 2015, the beginning of the Class Period, Biogen issued a press release announcing its full year and fourth quarter 2014 financial results. In the press release, the Company also provided important information related to its financial outlook for 2015. In relevant part, the press release stated:

> **2015 Financial Guidance**
>
> Biogen Idec also announced its full year 2015 financial guidance. This guidance consists of the following components:
>
> •       ***Revenue growth is expected to be approximately 14% to 16% compared to 2014***.
> •       R&D expense is expected to be approximately 19% to 20% of total revenue.
> •       SG&A expense is expected to be approximately 20% to 21% of total revenue.
> •       GAAP diluted EPS is expected to be between $15.45 and $15.85.

---

[1] See http://www.tecfidera.com/about (accessed on July 27, 2015).

- Non-GAAP diluted EPS is expected to be between $16.60 and $17.00.

Biogen Idec may incur charges, realize gains or experience other events in 2015 that could cause actual results to vary from this guidance.

In 2015, the Company plans to provide annual financial guidance and one update per year, which is expected to be provided in connection with its second quarter earnings release. This modest change is intended to synchronize guidance with internal business planning processes and to ensure a continued focus on long-term value creation.

(Emphasis added.)

22. In a conference call with financial analysts also on January 29, 2015, Defendant Clancy reiterated the Company's revenue growth expectations, stating, "Let me turn to our full year 2015 guidance. . . . [W]e expect revenue growth between 14% and 16%."

23. Then, on April 24, 2015, Biogen held another conference call with financial analysts related to the Company's release of its first quarter 2015 financial results. During the Call, Defendant Clancy stated that the Company would not update its guidance until after the second quarter. In addition, Defendant Clancy discussed the particular importance of Tecfidera to the Company's revenue outlook:

> There are two key items that we're keeping a watchful eye on for the rest of the year. First, while foreign exchange has been a headwind, any additional strengthening of the dollar could exacerbate this impact on revenue. And second, ***we continue to expect TECFIDERA will represent the largest contributor to our overall revenue growth. If the U.S. trajectory does not improve, we may come in at the lower end of our previously provided revenue growth***.

(Emphasis added.) Accordingly, Defendant Clancy not only reaffirmed the Company's previously issued 2015 revenue growth guidance, a range of 14% to 16% over 2014, he stated that without improvement in Tecfidera's performance, the Company would generate revenue growth "at the lower end of [Biogen's] previously provided revenue growth."

7

**The Truth Emerges**

24. On July 24, 2015, the Company issued a press release announcing its financial results for the second quarter of 2015. In addition to disclosing information about Biogen's previous financial performance, the press release disclosed revised 2015 financial guidance. The press release stated in pertinent part:

> **2015 Financial Guidance**
>
> As previously announced, the Company plans to provide annual financial guidance and one update per year. Biogen's mid-year update to its full year 2015 financial guidance consists of the following components:
> - ***Revenue growth is expected to be approximately 6% to 8% compared to 2014, a decrease from prior guidance based largely on revised expectations for the growth of TECFIDERA.***
> - R&D expense is expected to be approximately 19% to 20% of total revenue, unchanged from prior guidance.
> - SG&A expense is expected to be approximately 20% to 21% of total revenue, unchanged from prior guidance.
> - GAAP diluted EPS is expected to be between $14.25 and $14.70, a decrease from prior guidance.
> - Non-GAAP diluted EPS is expected to be between $15.50 and $15.95, a decrease from prior guidance.

(Emphasis added.) Accordingly, Biogen reduced its revenue growth guidance by more than half "based largely on revised expectations for the growth of TECFIDERA."

25. On the same day, the Company filed its quarterly report on Form 10-Q with the SEC (the "10-Q"). The 10-Q disclosed that the Company generated $2.199 billion in revenue in the second quarter of 2015 compared to $2.056 billion in the same quarter of 2014. Accordingly, the Company's revenue grew by only 6.9% in the second quarter of 2015 over the second quarter of 2014.

26. As a result of revision to Biogen's 2015 revenue growth outlook, the price of Biogen common stock declined from a closing share price of $385.05 on July 23, 2015 to close

8

at $300.03 per share on July 24, 2015, a loss of more than 22%, on extremely heavy trading volume.

## LOSS CAUSATION

27. During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Biogen's securities and operated as a fraud or deceit on Class Period purchasers of Biogen securities by materially misleading the investing public. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Biogen's securities fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Biogen's securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## FRAUD-ON-THE-MARKET DOCTRINE

28. At all relevant times, the market for Biogen's securities was an efficient market for the following reasons, among others:

a) Biogen securities met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b) Biogen filed periodic public reports with the SEC and the NASDAQ; and

c) Biogen regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

29. As a result of the foregoing, the market for Biogen's securities promptly digested current information regarding Biogen from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all purchasers of Biogen securities during the Class Period suffered similar injury through their purchase of Biogen securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

30. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Biogen who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Biogen securities during the Class Period (the "Class"). Excluded from the Class are Defendants and

their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable, since Biogen has millions of shares of stock outstanding and because the Company's shares were actively traded on the NASDAQ. As of July 17, 2015, Biogen had more than 235 million shares issued and outstanding. While the exact number of Class members in unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

33. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a) whether the Exchange Act was violated by Defendants;

(b) whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

(c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d) whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

(e) whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

(f) whether the price of Biogen securities was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

(g) whether the members of the Class have sustained damages as a result of the decline in value of Biogen's stock when the truth was revealed, and if so, what is the appropriate measure of damages.

34. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

35. Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5
### (Against All Defendants)

37. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

38. This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

39. During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing

public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Biogen's common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Biogen's common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

40. Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's common stock in an effort to maintain artificially high market prices for Biogen's common stock in violation of Section 10(b) of the Exchange Act and Rule 10-5.

41. As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete, and accurate information. Defendants' material misrepresentations and omissions as set forth herein violated that duty.

42. Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff

13

and the Class. Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

43. As a result of Defendants' fraudulent activity, the market price of Biogen was artificially inflated during the Class Period.

44. In ignorance of the true financial condition of Biogen, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Biogen containing the misleading information, purchased or otherwise acquired Biogen's common stock at artificially inflated prices during the Class Period.

45. Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in Biogen's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Biogen's stock in reliance on the integrity of the market price of that common stock, and Defendants manipulated the price of Biogen's common stock through their misconduct as described herein. Plaintiff's and the Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Biogen.

46. Throughout the Class Period, Defendants were aware of material non-public information concerning Biogen's fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

47. As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Biogen common stock during the Class Period.

## COUNT II
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

48. Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

49. During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains solely under the control of the Defendants.

50. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements. The Individual

Defendants were provided with copies of, reviewed and approved, and/or signed such filings, reports, releases and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

51. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Biogen's business, the information contained in its filings with the SEC, and its public statements. Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, the Individual Defendants are responsible for the accuracy of Biogen's corporate releases detailed herein and is therefore responsible and liable for the misrepresentations contained herein.

52. The Individual Defendants acted as controlling persons of Biogen within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Biogen to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Biogen and all of its employees. As alleged above, Biogen is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

53. As a direct and proximate result of the wrongful conduct of Biogen and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment as follows:

(A) Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and her counsel as Class counsel;

(B) Awarding Plaintiff and the members of the Class damages, including interest;

(C) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

(D) Awarding such equitable/injunctive or other relief as the Court may deem just and proper

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 18, 2015

LEVI & KORSINSKY, LLP
Shannon L. Hopkins
Nicholas I. Porritt
Julia J. Sun
Adam M. Apton
Michael B. Ershowsky
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

*Counsel for Plaintiff and Proposed Lead Counsel for the Class*