UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NICOLE TEHRANI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BIOGEN, INC., GEORGE A. SCANGOS, and PAUL J. CLANCY,<br><br>    Defendants. | Civil Action No.<br>15-13189-FDS |

**MEMORANDUM AND ORDER ON MOTION FOR APPOINTMENT AS
LEAD PLAINTIFF AND FOR APPROVAL OF LEAD COUNSEL**

**SAYLOR, J.**

    This is a putative class action involving alleged violations of the Securities Exchange Act of 1934. Plaintiff has brought suit, on behalf of a class of similarly situated persons, against Biogen, Inc., and two Biogen employees. Plaintiff contends that class members were harmed when they purchased Biogen securities at prices that were artificially inflated by the company's false and misleading statements about its products.

    GBR Group, LTD. has moved for (1) appointment as lead plaintiff and (2) approval of its selection of Labaton Sucharow LLP and Bronstein, Gewirtz & Grossman, LLC as lead counsel, and the Thornton Law Firm LLP as liaison counsel for the class, pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B). Defendants do not oppose the motion. For the reasons set forth below, GBR's motion will be granted, GBR will be appointed

lead plaintiff, Labaton Sucharow and Bronstein, Gewirtz & Grossman will be approved as co-lead counsel, and the Thornton Law Firm will be approved as liaison counsel for the class.

## I. Background

Unless otherwise noted, all facts are stated as set forth in the complaint.

Biogen is a biopharmaceutical company focused on discovering, developing, manufacturing, and delivering therapies for neurological, autoimmune, and hematologic disorders. (Compl. ¶ 2). The company's products include prescription medicines used to treat, among other things, multiple sclerosis and hemophilia A and B. (*Id.*). Biogen is based in Cambridge, Massachusetts. (*Id.* at ¶ 9).

One of Biogen's products is the drug Tecfidera, which was approved by the Food and Drug Administration for use in treating relapsing multiple sclerosis. (*Id.* at ¶ 19). Tecfidera treats relapsing MS by slowing the development of brain lesions and the progression of physical disability. (*Id.* at ¶ 20). The drug was approved for use among patients with a specific genetic mutation—a group that accounts for approximately 4% of those with cystic fibrosis. (*Id.*).

On Jan 29, 2015, Biogen issued a press release announcing its full-year and fourth-quarter results for 2014 and providing information related to its financial outlook in 2015. (*Id.* at ¶ 21). In the press release, Biogen issued guidance that "[r]evenue growth is expected to be approximately 14% to 16% compared to 2014." (*Id.*) On January 29, 2015, defendant Clancy reiterated this guidance during a conference call. (*Id.* at ¶ 22).

On July 24, 2015, Biogen issued a press release announcing its financial results for the second quarter of 2015, and revising its 2015 financial guidance. (*Id.* at ¶ 24). The release stated, in part, "[r]evenue growth is expected to be approximately 6% to 8% compared to 2014, a

decrease from prior guidance based largely on revised expectations for the growth of TECFIDERA." (*Id.*).

Biogen's stock price, which had closed at $385.05 per share on July 23, 2015, closed at $300.03 per share on July 24. (*Id.* at ¶ 26).

On August 18, 2015, Tehrani filed a complaint on behalf of all purchasers of Biogen common stock between January 29, 2015, and July 23, 2015. The complaint contends that Biogen and the individual defendants violated federal securities law by making false and misleading public statements concerning Biogen products. On October 19, 2015, GBR moved this Court to appoint it as lead plaintiff, and to approve GBR's selection of Labaton Sucharow and Bronstein, Gewirtz & Grossman as co-lead counsel for the class, and the Thornton Law Firm as liaison counsel for the class.

## II.     Legal Standard

The Private Securities Litigation Reform Act ("PSLRA") sets forth detailed procedures for bringing and maintaining securities class actions. The provisions are intended to increase the chances that securities fraud cases are brought by investors who have substantial and genuine interests in the litigation. *See In re Party City Sec. Litig.*, 189 F.R.D 91, 103 (D.N.J. 1999) ("Specifically, the [PSLRA] provides a method for identifying the plaintiff or plaintiffs who are mostly strongly aligned with the class of shareholders, and most capable of controlling the selection and activities of counsel.")

Under the PSLRA, a plaintiff seeking to represent a class must provide a sworn certification at the time the complaint is filed that:

    (1) states that plaintiff has reviewed and authorized the complaint;

    (2) states that plaintiff did not purchase the security at issue in the complaint at the direction of counsel or in order to participate in a lawsuit;

>(3) states that plaintiff is willing to serve as a representative party and participate in trial;
>
>(4) sets forth all of plaintiff's transactions involving the security that is the subject of the complaint during the class period;
>
>(5) identifies any other action filed in the previous three years in which plaintiff has sought to be a class representative; and
>
>(6) states that plaintiff will not accept payment for being the representative party, beyond a pro rata share of the recovery, without court approval.

15 U.S.C. § 78u-4(a)(2).

A plaintiff who brings such an action must, within 20 days of filing the complaint, publish notice of the pendency of the class action in a widely-circulated, national business-oriented publication or wire service. 15 U.S.C. § 78u-4(a)(3)(A)(i). Within 60 days after publication of the notice, any other person or group of persons who are members of the putative class may apply to the court to be appointed as lead plaintiff in the action, whether or not they have filed a complaint. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II).

Once the 60-day period following publication of notice has run, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). There is a rebuttable presumption that the most adequate plaintiff in any such action is the person or persons that:

>(1) has either filed the complaint or made a motion in response to notice by the party who filed the complaint;
>
>(2) has the largest financial interest in the relief sought by the class; and
>
>(3) otherwise satisfies the requirements of Fed. R. Civ. Proc. Rule 23.

15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption may only be rebutted upon proof by a member of the purported class that the person identified as the most adequate plaintiff either will

4

not fairly and adequately represent the class or is subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**III.    Analysis**

Plaintiff GBR has now moved for appointment as lead plaintiff and approval of its selections of lead and liaison counsel. Although four other plaintiffs have filed similar motions, one plaintiff has withdrawn its motion and the other three plaintiffs have filed notices of non-opposition to GBR's motion.[1] Defendants do not oppose GBR's motion.

    **A.    Presumed Lead Plaintiff**

Under the PSLRA, the Court must presume that the lead plaintiff is the person, or group of persons, who (1) filed the complaint or made a motion to be lead plaintiff, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, GBR meets all statutory requirements that govern the Court's choice of presumed lead plaintiff. Although GBR did not file the complaint, no other member of the purported class opposes GBR's appointment and all other competing motions for appointment as lead plaintiff have effectively been withdrawn.

GBR also appears to have the largest financial interest in the relief sought. GBR alleges that is has lost in excess of $2,400,000 on its investments in Biogen securities. No other party has come forward with any allegations of a larger financial interest in relief.

GBR otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, at least for the purposes of the present motion. Rule 23 provides that a party may

---

[1] The other plaintiffs who filed motions for appointment as lead plaintiff are Biogen Investor Group, Chillar Family Trust U.T.A., the City of Miami Fire Fighters' and Police Officers' Retirement Trust, and Robert L. Meyer. Biogen Investor Group has withdrawn its motion, and the other plaintiffs have filed notices of non-opposition to the appointment of GBR as lead plaintiff.

serve as a class representative only if four requirements are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In deciding a motion to serve as lead plaintiff, a court need only make findings as to the typicality and adequacy of the proposed lead plaintiff. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009). These findings need only be "preliminary." *Id.*

At this stage of the suit, both requirements are sufficiently met. As a preliminary matter, plaintiff's claims appear to be typical of the putative class's claims, in that they arise from the same course of events, and involve the same legal theory as to the claims of the rest of the class. *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001). Plaintiff also, as a preliminary matter, appears capable of adequately protecting the interests of the class, in that plaintiff possesses "common interests and an absence of conflict with the class members and . . . plaintiff's attorneys are qualified, experienced, and vigorously able to conduct the litigation." *Id.*

Thus, GBR is the presumed lead plaintiff.

### B.     Choice of Counsel

Pursuant to § 21D(a)(3)(B)(v) of the Exchange Act, the presumptive lead plaintiff may select and retain counsel to represent the purported plaintiff class. 15 U.S.C. §77u-4(a)(3)(B)(v). Lead plaintiff's choice of counsel is subject to approval by the court. *Id.*

GBR has chosen the law firms of Labaton Sucharow and Bronstein, Gewirtz & Grossman as co-lead counsel and the Thornton Law Firm as liaison counsel. This Court is aware of no reason why it should not approve of plaintiff's choice. It appears that the firms have handled a

number of shareholder and securities class actions, and have recovered awards for their clients. The firms also appear to have sufficient resources to handle the case. Accordingly, the Court will approve of GBR's selection of Labaton Sucharow and Bronstein, Gewirtz & Grossman as co-lead counsel and the Thornton Law Firm as liaison counsel.

**IV.   Conclusion**

For the reasons stated above, plaintiff's motion is GRANTED. GBR Group, LTD is appointed as lead plaintiff, and Labaton Sucharow and Bronstein, Gewirtz & Grossman are approved as co-lead counsel and the Thornton Law Firm is approved as liaison counsel in this case.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: November 18, 2015                                United States District Judge